**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

YAHICO CUELLO NESCOLARDE, CARLOS R.
MOLINA, JOSE A. CRUZ ESTRADA and NEL-
SON L. GARCIA,

Plaintiffs,

-vs-

SATISPIE, LLC; MICHAEL PINKOWSKI, in his
individual capacity; and PAUL TARANTINO, in
his individual capacity,

Defendants.

_____

DECISION AND ORDER

12-CV-6707-CJS-MWP

**APPEARANCES**

For Plaintiffs:                          David O. Irving, Esq.
                                         John Anthony Marsella, Esq.
                                         Worker Justice Center of New York
                                         1187 Culver Road
                                         Rochester, NY 14609
                                         (585) 325-3050

                                         Thomas Edward Feeney, Esq.
                                         Worker Justice Center of New York
                                         9 Main Street
                                         Kingston, NY 12401
                                         (845) 331-6615

For Defendants Michael Pinkowski and     Cheryl Smith Fisher, Esq.
SatisPie, LLC:                           Theresa E. Quinn, Esq.
                                         Magavern, Magavern & Grimm
                                         1100 Rand Building
                                         14 Lafayette Square
                                         Buffalo, NY 14203
                                         (716) 856-3500

For Defendant Paul Tarantino:                 Michael F. Chelus, Esq.
                                              Chelus, Herdzik, Speyer & Monte, P.C.
                                              438 Main Street Suite 1000
                                              Buffalo, NY 14202
                                              (716) 852-3600

**Siragusa, J.** This Title VII and New York Human Rights Law employment discrimi-

nation case is before the Court to resolve two summary judgment motions: ECF No. 29,

filed by Paul Tarantino ("Tarintino") on November 26, 2014; and ECF No. 30, filed by Mi-

chael Pinkowski ("Pinkowski") and SatisPie, LLP ("SatisPie"), on November 28, 2014. Plain-

tiffs oppose both motions. The Court heard oral argument on April 23, 2015, and for the

reasons stated below, the applications are granted in part, and denied in part.

## BACKGROUND

The parties have complied with Local Rule of Civil. Procedure 56 and filed state-

ments of fact, though the organizational philosophy of the asserted facts is not apparent.

The Court will attempt to recite the undisputed facts in a more logical manner than that uti-

lized by counsel.

In some instances, Plaintiffs' Local Rule 56 response to Defendants' statements of

fact includes this phrase: "Admitted to the extent that Defendant Tarantino has proffered

evidence that may be admissible." However, Local Rule 56(a)(2) states: "Each numbered

paragraph in the moving party's statement of material facts will be deemed admitted for

purposes of the motion unless it is specifically controverted by a correspondingly numbered

paragraph in the opposing statement." Therefore, the Court does not consider Plaintiffs'

phrase, "Admitted to the extent. . ." as specifically controverting a fact asserted by Defend-

ants.

All of the employees of SatisPie, LLC ("SatisPie") were hired as temporary employees through Select Truckers Plus. Plaintiff Yahico Cuello Nescolarde ("Nescolarde") was hired as a cook around July 2009. SatisPie and its president, Michael Pinkowski ("Pinkowski") assert that plaintiffs Nescolarde, Nelson Garcia[1] ("Garcia"), and Jose A. Cruz Estrada ("Estrada") were all laid off for seasonal reasons. Plaintiffs dispute that assertion.[2] The parties agree, however, that SatisPie employs more workers during the busy season, and then it lays off workers after the busy season.[3] Of the plaintiffs, only Carlos R. Molina ("Molina"), who was originally employed as a temporary employee, was later employed directly by SatisPie.

Molina is the only one of the plaintiffs who claims to have heard co-owner of SatisPie Paul Tarantino ("Tarantino") state that workers who could not speak English would be terminated.[4] SatisPie and Tarantino claim that workers at SatisPie have always been allowed to speak their native languages, but Plaintiffs dispute this claim. Plaintiffs know Herminino Martinez and know that he speaks no English.

SatisPie posted an advertisement for a Shipping and Receiving Warehouse Supervisor. Although SatisPie asserts that Molina made no formal complaint that he wanted the job and that he did not get it, and did not complain that he did not get the job until the posi-

---

[1] In an attempt to clear up confusion unnecessarily created by the parties' papers, the Court has identified three individuals with the sur-name of Garcia in this matter. The first, Nelson L. Garcia, is one of the named plaintiffs and will be referred to in this Decision and Order as "Garcia." The second individual, Jose Garcia, a Satispie Manager, will be referred to as "Jose Garcia (Satispie Manager)." The third individual, Jose Garcia, who is apparently a co-worker of the plaintiffs, will be referred to as "J. Garcia."

[2] Pl.'s Statement of Facts ¶ 4, Mar. 27, 2015, ECF No. 47-3.

[3] Pinkowski testified at a deposition that the busy season is normally from the week after Labor Day until Thanksgiving, when SatisPie produced about sixty percent of its entire product. Pinkowski Dep. 20:15–18, Nov. 26, 2014, ECF No. 29-11.

[4] Pl.s' Opposing Statement and Additional Material Facts ¶ 58, Mar. 27, 2015, ECF No. 47-3.

tion was filled, Molina disputes the assertion.[5] Further, Molina contends he spoke with SatisPie manager Robert Craiglow ("Craiglow") to inform him that he wanted to be considered for the warehouse supervisor position, which would have been a promotion for Molina.[6] Molina contends further that he was qualified for the position, and eventually was assigned to train the individual who was chosen for the position (a non-Hispanic). Molina complained to Richard Howell ("Howell"), the new warehouse manager, that he was passed up for the promotion due to his national origin.[7]

Molina had ongoing disciplinary problems and was given counseling on August 4, 2010 for violating company policies regarding use of the time clock, wearing jewelry, and protective clothing. Additionally, Molina was given a Written Warning, which he signed, on October 12, 2010, for assault of a company employee on October 11, 2010, a violation of company policy. Molina was suspended without pay along with the Written Warning. Finally, Molina was given a Final Warning for lack of cooperation/teamwork, failure to follow instructions, improper conduct and violation of company rules/conduct regarding punching in and punching out on November 4, 2010. This Final Warning was within thirty days of the latest disciplinary action and was treated as direct act of subordination. The Associate Disciplinary Report informed Molina that his failure to improve would lead to immediate termination.[8]

Tarantino and Jose Garcia, (SatisPie manager), met with Molina on or about March 8, 2011, and although Molina's duties and responsibilities were changed, his pay was not

---

[5] Pl.s' Opposing Statement and Additional Material Facts ¶ 50, Mar. 27, 2015, ECF No. 47-3.

[6] *Id.* ¶ 53.

[7] *Id.* ¶¶ 54–56.

[8] Associate Disciplinary Report at 1, Nov. 4, 2010, ECF No. 29-12.

reduced.

SatisPie had a policy in 2010 and earlier that permitted employees to purchase a limited number of imperfect pies for two dollars. The policy was later changed (though no date is alleged) which required employees to obtain a receipt when they purchase a a pie, and have a sticker on the pie box to be verified by a manager.

Ali Noor was interviewed regarding thefts at the plant by manager Robert Craiglow ("Craiglow"), which interview generated a written statement witnessed by Craiglow and Tarantino. A sting operation was conducted by the Monroe County Sheriff's Office and a video was made showing Molina leaving the facility with a pie in his hands. Molina was terminated by SatisPie. Unfortunately, when questioned about the time frame of when the theft allegedly took place, Tarantino was only able to state "I can't give an exact year, but— don't have—don't have a date. I don't have the records."[9]

At the time of SatisPie's response to the underlying Equal Employment Opportunity Commission ("EEOC") complaint, 71.85% of all employees placed by the temporary agency, Truckers Plus, which SatisPie had been using since 2010, were Hispanic. As of the date of SatisPie's response to Plaintiffs' EEOC complaint, 68.75% of the Truckers Plus employees were Hispanic. The overall breakdown of employees was 25% African, 2.5% Asian, 2.5% Native American, 35% European, and 35% Hispanic. SatisPie also has Hispanic supervisors. Hispanic employees at SatisPie have worked hard and received promotions and raises. The 2010-2011 busy season was extended to stock up inventory to have product available while the plant was shut down for renovations.

---

[9] Tarantino Dep. 23:4–5, Nov. 26, 2014, ECF No. 29-10.

"SatisPie provides all employees and workers with a handbook setting out the rules and regulation people are elected [sic] to abide by, as every company does."[10] The handbook was drafted by a professional human resources company in English. The handbook includes provisions barring harassment, discrimination based on national origin, violence, and instructs workers to utilize an "Open Door Policy" (which means that any worker can seek out a manager or Pinkowski regarding any issue).[11] All three of the plaintiffs who were temporary workers received the SatisPie handbook when they began working there. Molina was given a handbook when he first began at SatisPie and read the handbook. None of the plaintiffs in this action utilized the Open Door Policy. Nescolarde read the handbook, and knew no discrimination based upon national origin was to be tolerated. He did not complain to any manager, or Pinkowski. Nescolarde knew Pinkowski and had worked with him in the kitchen, but did not report any perceived discriminatory behavior to him. He admitted that Hispanics at SatisPie just "complained amongst themselves."[12]

Tarantino and SatisPie assert that the ability to speak English is not necessary for success at SatisPie; however, Plaintiffs disagree with that assertion. The parties do agree that several SatisPie permanent and temporary employees do not speak any English, including one unidentified 15-year employee of SatisPie who does not speak any English. Positions that require proficiency in English include those in shipping and receiving, because they are interacting with truckers from outside the company, interfacing with manag-

---

[10] Def.s' Statement of Undisputed Facts ¶ 34, Nov. 28, 2014, ECF No. 30-1.

[11] The policy states, "If a manager cannot give you a satisfactory answer, we have an OPEN DOOR POLICY that encourages you to talk with any member of management you wish. We know that if we are to continue to provide the best possible environment to all of our associates, we must respect the needs and concerns of all people by keeping communication lines open." Open Door Policy (Ex. 9), Nov. 26, 2014, ECF No. 29-12.

[12] Def.s' Statement of Undisputed Facts ¶ 43.

ers, documenting inventory, filling out paperwork, and organizing stock to comply with stringent government regulations. For other positions, SatisPie has enough bilingual people to translate for non-English speakers in other departments. Many languages are heard every day on all shifts and in all departments, including Spanish, Russian, Arabic and Farsi.

All the plaintiffs are aware that at the time they were employed at SatisPie, many Hispanics were employed there, that some did not speak English and that Hispanic workers made up the majority of the workforce during the busy season. Plaintiffs add that when Estrada and Garcia were informed of their terminations, Jose Garcia (Satispie manager), told them their terminations were a result of their not speaking English.[13]

Garcia understood he was a temporary worker when employed and that at the end of busy season, layoffs occur. On the date of his deposition, Garcia admitted he did not know why he was laid off and at his deposition stated, when asked: "I don't really know why I was dismissed. Jose [Jose Garcia, a Satispie manager] told me it was because I didn't speak English."[14]

Around November 5, 2010, Tarantino and Jose Garcia (Satispie manager), met with Nescolarde regarding a disciplinary violation. Nescolarde had been trained regarding the required liquid egg traceability form and understood that its purpose was to track the lot from which materials originate. Nescolarde signed a written warning citing him for lack of cooperation, failure to follow instructions, substandard work, and violations of rules and conduct. The warning "provided a timetable for improvement as immediate."[15]

Plaintiffs' complaint contains four causes of action: two pursuant to Federal law, and

---

[13] *Id.* ¶ 61.

[14] Nelson Garcia Dep. 42:19–21, Nov. 26, 2014, ECF No. 29-9.

[15] *Id.* ¶ 46.

two pursuant to State law. They are:

(1) Title VII discrimination by SatisPie by taking adverse employment actions against them, including termination, because of their national origin;

(2) Title VII retaliation by SatisPie against Molina by demoting and ultimately terminating him because he complained of what he reasonably believed were discriminatory practices against him as a result of his national origin;

(3) New York Human Rights Law violations against all defendants by taking adverse employment actions against Plaintiffs and terminating Plaintiffs from employment because of their national origins; and

(4) New York Human Rights Law violations by all defendants by retaliating against Molina by demoting and ultimately firing him because he complained of what he reasonably believed were discriminatory practices against him as a result of his national origin.

## STANDARDS OF LAW
### *Summary Judgment Standard*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDER-AL PRACTICE ' 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy

this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert. denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)(citations and internal quotations omitted). Nevertheless, it is "beyond cavil that summary judgment may

be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Moreover, a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den.* 474 U.S. 829 (1985).

**Title VII (42 U.S.C. § 2000e et seq.)**

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999) (citations omitted), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006).

"The term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88, 94 S. Ct. 334, 336, 38 L. Ed. 2d 287 (1973) (footnote omitted).

> To establish a *prima facie* case of race or national origin discrimination under Title VII, a plaintiff must show that: "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012); *see also Mills v. S. Connecticut State Univ.,* 519 Fed. Appx. 73, 75 (2d Cir. 2013); *Ruiz,* 609 F.3d at 491–92.

*Sethi v. Narod*, No. 11-CV-2511 MKB, 2014 WL 1343069 (E.D.N.Y. Apr. 2, 2014).

It is well settled that "claims brought under New York State's Human Rights Law are

analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629, n.1 (2d Cir. 1997), *cert den.* 522 U.S. 997 (1997). Consequently, unless otherwise noted, references to Title VII herein are also intended to refer to the NYHRL.

In *University of Texas Southwestern Medical Center v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (Jun. 24, 2013), the Supreme Court held that because Title VII's retaliation provision is in a different section from its status-based section, a "but for" causation test applies in retaliation claims. "The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.*, 133 S. Ct. at 2534.

### McDonnell Douglas Burden Shifting Framework

Title VII claims are analyzed using the well-settled *McDonnell Douglas*[16] burden-shifting framework:

> A plaintiff establishes a prima facie case of discrimination by showing that he or she (1) is a member of a protected [group] . . . .; (2) was qualified to perform the duties required by the position; (3) was subjected to an adverse employment action; and (4) the adverse employment action occurred in circumstances that gave rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003).
>
> * * *
>
> Once the plaintiff presents a prima facie case[17], the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981). Upon the defendant's articulation of a legitimate, non-discriminatory reason, the presumption of

---

[16] [2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

[17] "A plaintiff's burden of establishing a *prima facie* case is *de minimis*. The requirement is neither onerous, nor intended to be rigid, mechanized or ritualistic." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 467 (citations and internal quotation marks omitted).

discrimination arising from the plaintiff's prima facie showing " 'drops out of the picture,' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993)); *see Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000), and the burden of production shifts back to the plaintiff to adduce evidence sufficient for a reasonable jury to conclude that discrimination was a reason for the employment action, *see Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir.2000). In deciding a motion for summary judgment, the court is to examine "the entire record to determine whether the plaintiff could satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " *Id.* at 90 (*quoting Reeves*, 530 U.S. at 143, 120 S.Ct. 2097). Thus, summary judgment is appropriate when the plaintiff "has presented no evidence upon which a reasonable trier of fact could base the conclusion that [discrimination] was a determinative factor" in the defendant's employment decision. *Schnabel*, 232 F.3d at 91.

*Butts v. NYC Dept. of Housing Preservation and Dev.*, No. 07-1930-cv, 307 Fed. Appx. 596, 2009 WL 190403 at *1-2 (2d Cir. Jan. 28, 2009); *see also, Terry v. Ashcroft*, 336 F.3d at 138 ("[O]nce the defendant has made a showing of a neutral reason for the complained of action, to defeat summary judgment the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.") (citations and internal quotations omitted).

### *Language Policies*

Generally, the fact that an employer has a policy preferring English over all other languages is not evidence of discriminatory intent. *See, Joseph v. North Shore Univ. Hosp.*, No. 11–1014–cv, 2012 WL 1086107 at *2 (2d Cir. Apr. 3, 2012) (Fact that Haitian employee was reprimanded for speaking French, which violated employer's policy to speak English unless assisting a patient who spoke French, did not support a discrimination claim on the basis of national origin); *Barbosa v. Continuum Health Partners, Inc.*, 716 F.Supp.2d 210, 220 (S.D.N.Y. 2010) ("[T]he enforcement of an English-only policy, in and of itself, does not

constitute a hostile work environment on the basis of race."). However, such a policy may raise an inference of discriminatory intent if supported by other evidence:

> While a speak-English instruction may form the basis for an inference of national origin discrimination if supported by other evidence, courts have upheld limited English-only policies against Title VII challenges when supported by valid business justification.
>
> * * *
>
> Additionally, courts have been especially leery of finding a limited English-only policy's proffered justification to be a pretext when applied to a bilingual employee such as Plaintiff who is capable of communicating while not violating the policy. Furthermore, courts have found that the fact that an employee has been asked or required to speak Spanish on the job undercuts any inference of discrimination when evaluating a limited English-only policy.

*Perez v. New York Presbyterian Hosp.*, No. 05 Civ. 5749(LBS), 2009 WL 3634038 at *14 (S.D.N.Y. Nov. 3, 2009). The Court understands the foregoing legal principles to indicate that an employer may require employees to speak English where there is a legitimate reason for doing so, but it may not forbid employees from speaking their native tongues if the reason is because of discriminatory animus toward the employee's national origin.

## ANALYSIS

Each of the four plaintiffs is of Hispanic origin and a member of a protected class. Estrada, Garcia, and Molina are of Puerto Rican descent, and Nescolarde is of Cuban descent. Each claims he was qualified to perform the duties required of his position. Garcia, Nescolarde, and Molina were each given merit-based pay raises. Each was also eventually terminated, and Molina was not promoted to warehouse supervisor.

### Evidence of Discrimination

Plaintiffs' evidence of discriminatory animus consists of the following: (1) Tarantino's remark, which he disputes, to Molina in March 2011 that Hispanic employees who could not

speak English would be terminated;[18] (2) Tarantino's request of Nescolarde and others that they not speak Spanish in the cafeteria during a lunch break;[19] (3) Tarantino's requirement that those speaking on the company-wide intercom use English, not Spanish;[20] and (4) Estrada's and Garcia's statements that when Jose Garcia (SatisPie manager), phoned each telling them not to return to work, he told each that he was being terminated because he did not speak English.[21] Tarantino was a 20% owner of the company and the plant manager. In his deposition testimony, he was asked about the above assertions and re-sponded: "I never, never told an employee, instructed an employee, asked an employee to not speak their [sic] own language while they [sic] were on their [sic] personal time or while they [sic] were on company time."[22] With regard to the use of the company-wide intercom, Tarantino stated, "I don't recall that I told an employee not to use other languages [than English] on the intercom."[23]

In support of his assertions, Molina cites to his deposition testimony, consisting of the following relevant questions and responses (with the assistance of an interpreter):

> Q. Do you remember answering interrogatory number 4 that employees were told that Hispanic employees who could not speak English would be termi-nated?
>
> A. I remember that. I didn't say that.

---

[18] Molina Dep. 24:7–12 & 60:3–10.

[19] Nescolarde Dep. 53:17–21 ("Sometimes we were in cafeteria and we were speaking Spanish and he passed by and asked us not to speak Spanish and we were having a right because we were in a recess having lunch. We were having lunch. We were having a resting period during lunch time."); Garcia Dep. 35:22–24 ("Q. Why couldn't you talk to your coworkers? A. Mr. Tarantino didn't want us to speak Spanish while we were having lunch.").

[20] Nescolarde Dep. 48:25–49:15.

[21] Pl.s' Opposing Statement and Additional Material Facts ¶ 61.

[22] Tarantino Dep. 17:17–20.

[23] Tarantino Dep. 18:22–23.

Q. Who said that?

A. Paul Tarantino.

Q. When did he say that?

A. When he transferred me from the shipping department to the office with Jose Garcia who was supposed to be my supervisor. He transferred me because he comment or he said that all the employees that were working on the line production that were not speaking English, they will not be there next year.

Q. When did he say this?

A. When he transferred me from the shipping department to the production he—I was in the office with Jose Garcia. Jose Garcia was present and he said that.[24]

Molina further stated that Tarantino made the statement between March 1 and March 16, 2011.[25] Tarantino, during his deposition testimony, denied making any such statement:

Q. You stated before that there was indeed a conversation that took place with Carlos [Molina] and Jose Garcia[26].

A. That is correct.

Q. During that conversation did you say anything about employees and their ability to speak English?

A. Absolutely not. The conversation was centered around Mr. Molina's reassignment to production and that his direct report would be Mr. Garcia.[27]

In addition, Jose Garcia (Satispie Manager) stated in the following an affidavit:

4. I was present for the entire meeting with Carlos Molina and Paul Tarantino in March 2011 when Carlos Molina was transferred to the production department.

---

[24] Molina Dep. 24:7–25, Sept. 22, 2014, ECF No. 29-7.

[25] *Id.* 25:10–13.

[26] Satispie Manager

[27] Tarantino Dep. 45:3–12, Oct. 17, 2014, ECF No. 29-10.

15

5. Molina claims at that meeting Tarantino told him that all non-English speakers would be laid off.

6. Tarantino never said anything about non-English speakers at that meeting. [sic]

7. I am not aware of him saying anything regarding non-English speakers losing their jobs because they could not speak English.[28]

Further, Jose Garcia (Satispie Manager) stated in his affidavit that he never contacted any temporary or permanent employee after he had been laid off, and never called any of the plaintiffs in this case to tell them they had been terminated or laid off due to not speaking English.[29]

### Carlos R. Molina

Molina relates that in August of 2010, he was passed over for a warehouse supervisor position. He spoke to Craiglow about the position when he saw an advertisement for it in a newspaper on August 6, 2010.[30] Molina testified that Craiglow said he could apply for the position,[31] but later testified that "the only thing I received from [Craiglow] is that he laughed at me when I indicated that I would like to submit my application,"[32] and "[Craiglow] did not allow me to apply for it. He laughed to my face and asked me to leave the office."[33] Molina did not submit a written application for the position, which was a requirement.[34]

---

[28] Garcia Aff. ¶¶ 4–7, Nov. 21, 2014, ECF No. 32.

[29] *Id.* ¶¶ 11–12.

[30] Molina Dep. 35:22–25 & 36:13–15.

[31] Molina Dep. 36:15.

[32] Molina Dep. 38:8–10.

[33] Molina Dep. 55:17–18.

[34] Molina Dep. 57:16–20.

Craiglow hired Howell as warehouse supervisor, and instructed Molina to train Howell.[35] Molina's testimony on the issue is inconsistent, yet he maintains that "Craiglow's treatment of [him] prevented him from translating his desire for the promotion into a formal application."[36]

On November 4, 2010, Craiglow met with Molina concerning a final warning about an incident that occurred that day. Molina reportedly did not "punch out or back in from lunch period."[37] He had previously been counseled by Paul Tarantino concerning properly punching in and out. Molina had in the past been counseled regarding a loud argument he engaged in with a fellow employee, whom he was also accused of assaulting, on October 12, 2010.[38] Because the November 4 conduct took place within 30 days of his last written counseling (for the argument and assault), he was informed that the November 4 "issue is treated as a direct act of insubordination and therefore a final warning."[39]

Molino's evidence of discriminatory animus is the alleged comment by Tarantino, that Hispanic employees who could not speak English would be terminated, which Tarantino, and Jose Garcia (Satispie manager), who also participated in the conversation, both deny was made. Plaintiffs acknowledge that Tarantino disputes having made the comment, but the Court will assume, for the sake of these motions, that it was made. Plaintiffs argue that though the comment was only made one time, it was made in March 2011 "and came portentously close to the adverse employment actions suffered by each Plaintiff."[40] Defend-

---

[35] Molina Dep. 37:3–4, 58:8 & 58:16–18.

[36] Pl.s' Opposition to Pinkowski & Satispie 9, Mar. 27, 2015, ECF No. 47.

[37] Associate Disciplinary Report 3, Nov. 26, 2015, ECF No. 29-12.

[38] *Id.* 2.

[39] *Id.* 3.

[40] Pl.s' Mem. of Law 10, Mar. 27, 2015, ECF No. 46.

ants argue that even if the statement was made, it was merely a stray remark, and was, in any case, untrue, since Herminio Martinez still works at SatisPie and speaks no English.[41]

Defendants further point out that in a March 11, 2011, statement, Noor Ali, an eye-witness, stated that during the busy season of 2010, he

> saw Jose Garcia[42] place boxes of pies in his car, . . . [and] saw Jose put large containers of oil used to make pies in his station wagon as well, but at a different time.

> The reason I have not come forward until now is that I have been threatened by Jose Garcia and Carlos Molina, who I have also seen working with Jose taking things. . . . Carlos told me I'd be a snitch if I told Paul or Bob.[43]

Another employee, identified only as RC, alleged that Molina was "in on these deals," and described the theft of pies as well as oil, milk, and sugar from SatisPie.[44]

Defendants Pinkowski and Satispie also rely on case law in support of their argument that a stray remark, without more, is insufficient to get a discrimination case to the jury.[45] In *Danzer v. Norden Sys.*, 151 F.3d 50 (2d Cir. 1998), the Second Circuit discussed its holding in

> *Woroski*, 31 F.3d at 109-10, in which we concluded that stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination. But all that *Woroski* holds is that such comments, without more, cannot get a discrimination suit to a jury. (If it were otherwise, disparaged workers who had the "fortuity" of being in the class encompassed by the stray remark would have an instantaneous jury case on discrimination, regardless of the ground for their dismissal.) When, however (as in the instant appeal), other indicia of discrimination are properly presented, the remarks can no longer be deemed "stray," and the jury has a right to conclude that they bear a more ominous significance.

---

[41] Def.s' Mem. of Law 13, Nov. 28, 2014, ECF No. 33.

[42] J. Garcia, co-worker.

[43] "Testimony" of Noor Ali Regarding Eyewitness account of theft of SatisPie company property by SatisPie workers (Ex. 7) 1, Nov. 26, 2014, ECF No. 29-12.

[44] Memo to MP, PT, From RC (2011) (Ex. 8), Nov. 26, 2014, ECF No. 29-12.

[45] Def.s' Mem. of Law 13, Nov. 28, 2014, ECF No. 33

*Danzer*, 151 F.3d at 56. In a later case, the Second Circuit revisited the holding in *Woroski*, writing: "In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a *per se* rule requiring *in all instances* that an ADEA claim-ant offer more than a prima facie case and evidence of pretext. Thus, to the extent that *Woroski* and *Hollander* imposed such a rule, *see ante* at 88, they no longer may be fol-lowed." *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000)

In the instant case, Plaintiffs claim adverse employment consequences in close proximity to the date of Tarantino's remark. On this issue, Plaintiffs' memorandum of law states: "Defendant Tarantino's statement was made in March of 2011 and came porten-tously close to the adverse employment actions suffered by each Plaintiff. Molina Depo 24:10; 25:7. The timing alone suggests the adverse actions suffered by Plaintiffs were dis-criminatory in nature."[46] Nescolarde was terminated on February 14, 2011; Estrada on Feb-ruary 18, 2011; Garcia on March 15, 2011; and Molina on March 16, 2011.[47] The Court finds that the Tarantino's comment was in close proximity to Molina's termination, and that Molina has made a *prima facie* case of discrimination under Title VII and the NYSHRL.

With regard to a retaliation claim, however, Molina has only established that Craiglow laughed him out of the office when Molina expressed interest in the warehouse supervisor position. This showing falls short of establishing a prima facie case of retaliation. Molina asks the Court to speculate that Craiglow laughed at him because he was of His-panic origin. Molina testified he complained to Howell, a manager, about being passed over for the warehouse position, but also admits he never applied for it, and his complaints oc-

---

[46] Pl.s' Mem. of Law 10.

[47] Molina Dep. 11:22–23.

curred only after the position was filled. Molina stated in a post-deposition affidavit that "[i]n or about March 2011, [he] complained to Richard Howell, who was then [his] supervisor, about having been passed up for the promotion [to warehouse supervisor] because of [Molina's] national origin."[48] He relates that after his discussion with Howell, Howell spoke with Tarantino and thereafter Molina claims he was "treated differently at the warehouse. Paul Tarantino and Robert Craiglow would look for reasons to discipline me."[49] During his deposition, which took place on September 22, 2014, Molina responded to the following question with the following response:

> Q. You've told me you didn't complain to anybody.
>
> A. When I complain I talk to Mr. Howell and I express my feelings because they did not qualify me, but Bob brings me Mr. Howell for me to train him and I clearly indicated to Mr. Howell that anything that he wants to know about the handling of the pie and other activities in the freezer to ask directly to me—to be asked directly to me.[50]

Molina's affidavit contradicts his deposition testimony on the point of engaging in a protected activity. As the Second Circuit stated in *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001): "an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied. The plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *McMenemy*, 241 F.3d at 285. Applying for the warehouse manager position is not a protected activity under Title VII, and the evidence in Molina's deposition testimony does not establish the required element either.

---

[48] Molina Aff. ¶ 15, Mar. 27, 2015, ECF No. 47-5.

[49] Molina Aff. ¶ 17–18.

[50] Molina Dep. 59:5–12.

Tarantino also testified that Molina was caught on camera stealing a pie:

A. He was observed on a camera. After he punched out he proceeded through the building to the front door. As a matter of fact he looked up at the camera, proceeded back through the facility to the packaging room and took a pie from the back room, and then proceeded back through the building and exited with that pie, sir.[51]

Molina was asked about the incident at his deposition and testified as follows:

Q. But you found out later you were seen on cameras; is that correct?

A. That is what they say.

Q. Do you dispute that you were seen on camera when you were punched out?

A. I dispute that because I never return to the company once I left.

Q. The question is do you dispute it. Yes or no?

A. Yes. . . .

Q. And were you terminated because you stole one pie? It's a yes or no question.

A. That is what the statement said by Mr. Pinkowski, and, in effect, yes.

Q. Thank you. No more questions on that issue.[52]

Defendants argue that even assuming Plaintiffs have established a prima facie case of discrimination and retaliation, on the issue of pretext under the *McDonnell Douglas* framework, they offer only speculation and conjecture. Def.s' Reply Mem. of Law 4, Apr. 10, 2015, ECF No. 48. Tarantino states that Plaintiffs were only seasonal employees, were hired and fired by the temporary hiring agency, which also maintains Plaintiffs' payroll records and government reporting requirements.[53] Only Molina was eventually hired directly by

---

[51] Tarantino Dep. 26:11–18.

[52] Molina Dep. 64:17–25; 68:3–8.

[53] Tarantino Mem. of Law 3, Nov. 26, 2014, ECF No. 29-14.

SatisPie, but he was terminated due to theft.[54] Consequently, Defendants contend that Plaintiffs have failed to show that they were discriminated against in violation of Title VII or the NYSHRL. This argument, however, overlooks Molina's denial[55] and his assertions that he did not return to the building after he left, and, therefore, could not have been caught on camera stealing a pie.

Material questions of fact remain to be resolved and, therefore, summary judgment against Molina on his discrimination claim is precluded. However, SatisPie is entitled to judgment on Molina's retaliation claim.

### *Yahico Cuello Nescolarde, Jose A. Cruz Estrada and Nelson L. Garcia*

The remaining plaintiffs were all seasonal employees. Their contention is that Defendants' assertion that they were let go as part of the normal seasonal employment ups and downs is false, and the real reason was discrimination. At oral argument, Plaintiffs' counsel argued that SatisPie's own production records do not support Defendants' assertion. Plaintiffs argue that after these employees were terminated, SatisPie's records show that it was making *more* pies, not less. Thus, SatisPie's proffered reason for terminating them (because of the seasonal nature of the business), Plaintiffs argue, is false. As for an inference that discrimination more likely than not was a basis for their termination, Plaintiffs point to Jose Garcia's (Satispie manager) phone calls to Estrada and Garcia. Jose Garcia (Satispie manager) told those two plaintiffs that their terminations were a result of their not speaking English. Jose Garcia (Satispie manager) denies he ever called them. Nescolarde, at his deposition, testified that he "was never told by anybody in the company the reason

---

[54] *Id.*

[55] Molina Decl ¶ 24, Mar. 27, 2015, [ECF No. 47-5](ECF No. 47-5).

for which [he] was terminated until [he] went to the EEOC."[56] Defendants give inconsistent reasons for laying off these three plaintiffs. Jose Garcia (Satispie manager) told Estrada and Garcia they were laid off for not speaking English. At the EEOC hearing, SatisPie submitted a sworn Position Statement that the "charging party…was terminated [on March 15, 2011] because he stole company property."[57] Although Plaintiffs' exhibit is not fully identified, it logically appears it is Garcia, who was earlier identified as being discharged on March 15, 2011. Exhibit E in Plaintiffs' papers concerns Estrada, and indicates that SatisPie terminated him because "he was insubordinate and attempted to start a fight with another employee, Ali Noor, who told management that Estrada failed to do his job."[58] Plaintiffs identify Exhibit E as a statement by SatisPie.[59] SatisPie's representations to the Court in their Rule 56 statements, however, state only that the two employees were laid off after the busy season.[60] The statement of facts cites to Pinkowski's deposition testimony at page 11, lines 13–18, which contain the following:

> Q. Okay. And why was Yahico Cuello Nescolarde separated from SatisPie?
>
> A. I believe he was laid off.
>
> Q. All right. And who decided to lay him off?
>
> A. That's part of the normal review each year that we do at the end of the season.[61]

Immediately following those questions and Pinkowski's responses, are the following ques-

---

[56] Nescolarde Dep. 36:19–21.

[57] Response to Charting Party's Complaint ¶ 1, *attached as Exhibit D* to Pl.s' Mem. of Law, Mar. 27, 2015, ECF No. 46-4.

[58] Pl.s' Ex. E ¶ 1, Mar. 27, 2015, ECF No. 46-4.

[59] *See* Pl.s' Mem. of Law at 9, Mar. 27, 2015, ECF No. 46.

[60] Def.s' Statement of Facts ¶ 6 ("Nescolarde, Estrada and Garcia were all laid off by Select Trucker Plus, the temp agency, after the busy season when they were no longer needed.").

[61] Pinkowski Dep. 11:13–18.

tions and responses:

> Q. Why was Jose Cruz Estrada separated from—
>
> A. I would assume the same reason. I wouldn't be involved in—I wouldn't be involved in that level of employ.[62]

As Justice O'Connor wrote in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000): "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." As mentioned earlier, Nescolarde was terminated on February 14, 2011; Estrada on February 18, 2011; and Garcia on March 15, 2011. It was not until March 11, 2011, that Noor Ali, a co-employee at SatisPie, provided a written statement implicating Jose Garcia[63], Carlos Molina, Yehico Cuello Nescolarde, and Nelson Garcia in the theft of company property.[64] The Court finds that material issues of fact as to the reason for Nescolarde's, Estrada's, and Garcia's terminations preclude summary judgment for Defendants.

## CONCLUSION

For the reasons stated above, Defendants' motions, ECF No. 29 and ECF No. 30, for summary judgment on Plaintiffs' first cause of action against SatisPie for discrimination are denied; Defendants' motions for summary judgment on Plaintiffs' second cause of action for retaliation by SatisPie against plaintiff Molina, are granted; Defendants' motions for summary judgment on Plaintiffs' third cause of action for discrimination by all defendants (both individual and corporate) under the New York Human Rights Law, are denied; and

---

[62] Pinkowski Dep. 11:19–22.

[63] Co-worker.

[64] Noor Ali statement (Mar. 11, 2011), *attached as Ex. 7 to Molina Exhibits*, Nov. 16, 2014, ECF No. 29-12.

Defendants' motions for summary judgment on Plaintiffs' fourth cause of action for retalia-

tion against all defendants (both individual and corporate) under the New York Human

Rights Law are granted.

IT IS SO ORDERED.

Dated:   March 2, 2016
         Rochester, New York

                   ENTER:      /s/ Charles J. Siragusa
                                   CHARLES J. SIRAGUSA
                                   United States District Judge